UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DEWON WILLIAMS,

          Petitioner,

                                      CASE NO. 2:07-CV-15490
v.                                HONORABLE GEORGE CARAM STEEH

MARY BERGHUIS,

          Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

Michigan prisoner Dewon Williams ("Petitioner") has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in violation of his constitutional rights.  Petitioner challenges his 2002 Oakland County Circuit Court convictions for first-degree murder, felon in possession of a firearm, and two counts of possession of a firearm for which he is currently serving a term of life imprisonment without the possibility of parole, a concurrent term of two to five years imprisonment, and a consecutive term of two years imprisonment.  In his pleadings, Petitioner raises claims concerning prosecutorial misconduct, the admission of photographic evidence and a 911 call, the denial of a directed verdict motion, the effectiveness of trial and appellate counsel, the jury instructions, and cumulative error.  Respondent has filed an answer to the petition contending that it should be denied because the claims lack merit and/or are barred by procedural default.  For the reasons stated herein, the Court denies the petition. The Court also denies a certificate of appealability and leave to proceed *in forma pauperis* on appeal.

1

# I. Facts and Procedural History

Petitioner's convictions arise from the shooting death of Timothy Miller at an apartment in

Pontiac, Michigan on February 6, 2001.  The Court adopts the statement of facts set forth by defense

counsel on Petitioner's direct appeal to the Michigan Court of Appeals, to the extent that those facts

are consistent with the record, as Respondent has done the same.  Those facts are as follows:

The Fight Earlier in the Day

Felicia Dowell, Mr. Williams' ex-girlfriend, (II 243), testified that around 4:00 to 5:00 p.m. on February 6, 2001, Mr. Williams was in his red Ford Escort when Timothy Miller (the eventual decedent) and Billy Hatten approached. Mr. Williams got out of the car and defended himself. (II 245, 256-257). Dowell arrived in her truck, and Mr. Williams' sister Tasha was with her. (II 262).  Miller and Mr. Williams began fighting. (ll 247). Tasha tried to calm Mr. Williams down. (II 261-263). During the fight, Miller punched Mr. Williams' sister Tasha in the nose. (II 248, 263). Mr. Williams swung a baseball bat at Miller at some point. Miller took the bat away, then he and Hatten left. (II 247). Either seconds or a couple of minutes after the fight, Miller and Hatten got into Mr. Williams' car (he had left the keys in) and slammed it into a stop sign. They also broke the car windows.6 (II 269). After the fight, they all went their separate ways, with Mr. Williams' car being stuck at Henderson and Washington. (II 249). Later, Mr. Williams returned and broke the windows of Miller's house. (II 250).

The morning and afternoon of that day, Dowell had seen Mr. Williams with a large handgun at her house at 209 Norton and also at his mother's house. (II 243-244). Earlier in the day, she described him as being "sloppy drunk" and having trouble walking and talking. He went to his mother's house to sleep. (II 256-257).

Tasha Williams, the defendant's sister, testified as a defense witness that Felicia Dowell drove her to Washington St., and she was there with Miller, Hatten and Mr. Williams. (II 404-405). She saw Hatten with a baseball bat and Miller with a 1½ to 2 foot long sledgehammer corning toward Mr. Williams as he sat in his car. Mr. Williams got out of the car with his bat. Miller hit Mr. Williams with a hammer in the arm, and Hatten hit Mr. Williams as well. (II 406-407). Tasha asked Dowell to help her break up the fight - she pulled them apart and Miller hit her with the hammer. She fell, got up, and he hit her again. When Hatten dropped his bat, Tasha grabbed it and hit Hatten in the back. (II 408). Mr. Williams hit Miller with a bat.

Eventually, Hatten and Miller walked away, and she saw them hitting Mr. Williams' car with the bats. She went to Freda's house, then to the doctor. (II 409). She did not see Mr. Williams with a gun that day. (II 412).

Billy Hatten testified that he and Miller heard that Mr. Williams was looking for them and went to him to find out what the problem was. Mr. Williams jumped out of his red Escort with a bat and fought with Miller. (II 276-277). Miller was hitting Mr. Williams with a one foot long metal bar. Mr. Williams' sister Tasha was hitting Miller on the back. Miller did not mean to hit Tasha, but he did so. (II 278). He also took the bat away from Mr. Williams, at which Mr. Williams ran away, saying, "I'll be back." (II 279). Hatten then proceeded to destroy Mr. Williams' car with a bat, adding that Miller hit the car one time as well. (II 280-281, 305). Police found the Escort near 16 Henderson, 254 feet from the apartments at 152 Washington. It was severely damaged, with all of its windows broken. (I 151).

Hatten and Miller went to Miller's house, but Hatten told Miller that it was not wise to stay there because his family might be in jeopardy, so they went to the store to get some wine then went to Doretha McCaleb's house to get out of sight. (II 280-282). Hatten denied that McCaleb's house was a drug house, although she was a user. (II 295-296).

Valita Yarbro lived at 16 Henderson with Miller and her four children, two of them by Miller. (I 216-217). On February 6, 2001, she returned to her apartment around 5:00 p.m. to find her windows broken. (1 218). At some point after that, Mr. Williams called and asked her where Miller and his friend Billy were. (I 221-222). Afterward, she went to 152 Washington because there were police there. (I 223).

<u>The Shooting</u>

Some time after the fight, Felicia Dowell saw Mr. Williams and two other men standing in front of an apartment building. They went in, then all came out. (II 251). She did not see Mr. Williams waving a gun, which is something she would have seen had it happened. (II 260). She did not see Mr. Williams with a gun after that. (II 254).

Doretha McCaleb was in her Pontiac apartment at 152 Washington, #33 with "Marie" and "Godfather" when Billy Hatten and decedent Timothy Miller arrived. (1 160, 163-165). Miller had a knot on his head and a broken arm. (I 172). McCaleb had just gotten out of jail the Thursday before. (I 188). She fell asleep around 2:30 or 3:00 p.m., and awoke when someone screamed her name. (I 168). She looked out her bathroom window and saw Mr. Williams waving a pistol. According to McCaleb, he said, "Tell Billy and Tim I'm on my way up there to kill them bitches..., after which McCaleb told him to think, and he stated "I'm on my way up in that bitch. I'm going to kill them hoes." (I 169-170). This was at about 4:30 to 5:00 p.m. (I 189). She saw someone named Pat (who was 5' 1" and wearing a red hat) and Elaine Lewis standing by Mr. Williams outside. She denied telling police that it was two men who were with Williams. (I 194-196).

Miller and Hatten picked up hammers. Hatten asked Miller if he had his hammer and they barricaded McCaleb's door. (I 175). According to McCaleb, Mr. Williams knocked on the door.  When she went to answer it, Hatten told her not to open it, but

3

to call police. She called 911. (I 177). Although she initially testified that Mr. Williams kicked in the door and stepped in, she later clarified that she did not actually see him do that, but she did see him enter the apartment after she heard the door being kicked in. (I 178, 214). Mr. Williams did not have her permission to enter. (I 175). McCaleb described Mr. Williams as saying, "This is for hitting my sister," then shooting Miller. He asked where Billy was. McCaleb cursed at him. When he put the gun to her face and told her to be quiet, she dove into the living room and spoke further with the 911 operator who had called back. (I 178-180). McCaleb described Mr. Williams as five to ten feet away when he shot Miller, and she described the weapon as a black and silver .22 or .25. (I 181-182).

According to McCaleb, this took place at about five minutes before 6:00 p.m. (I 189). McCaleb did not tell the 911 operator that Mr. Williams was the shooter. (I 207-208). Rather, the operator asked at one point, "Did I hear gunshots?" to which McCaleb replied, "Didn't I tell you somebody was going to get killed." The operator asked, "What happened?" to which McCaleb replied, "I don't know. I don't now. I don't know... all I know is somebody got shot." (I 183). The 911 tape was played for the jury and admitted as People's Exhibit 17 (PX # 17). (II 382-383).

Billy Hatten testified that he was looking out of McCaleb's window when he saw Mr. Williams coming around the back and side of the building. He secured the door by sticking a knife into it and grabbed hammers for he and Miller to defend themselves. (II 284-286). He did not see Mr. Williams waving a gun. (II 300). Nor did he see anyone else with Mr. Williams. (II 308). He heard a knock at the door and heard Mr. Williams say, "I know you bitches in there," after which the door was kicked in. (II 286-288). He heard Mr. Williams say, "Where that bitch ass Billy at?" (II 288). Miller stepped out and Hatten heard Mr. Williams say, "Damn, I can't find Billy. Since I can't find Billy, you hit my sister." Then he heard a gunshot. (II 288-289). Hatten did not see the shooting, as he went down the corridor when the door was kicked in, then went to hide in the closet. When he heard no more noise, he came out, saw Miller, and tried to help him. (II 289-290). Hatten ran to get help, but was stopped by police already outside the building. They told him to stay, but he left, as he had warrants. (II 291-292).

Hatten had a prior felony conviction for unarmed robbery. (II 282). He denied any drug use that day, although he did share a pint of wine. (II 297). He denied throwing the knife at the door. (II 298). He could not recall if he had threatened to shoot Maurice Jones (McCaleb's Neighbor) earlier that day. (II 305-306). Earlier, Valita Yarbro had testified that Miller was on tether for probation. (I 224).

Timothy Miller was pronounced dead at 6:06 p.m. (II 400-401). The cause of death was a gunshot wound to the chest, and the manner of death was homicide. (II 371). There was no evidence of stippling on the body, indicating that the shot was fired from more than two feet away. (II 375). The medical examiner recovered a lead bullet from the body and also noted the presence of a tether on Miller's left leg. (II 373). The toxicology screen showed the presence of alcohol (.09), as well as

4

Diazepam (Valium) and cocaine metabolites in Miller's system. (II 377). The prosecutor twice elicited from the medical examiner that a homicide meant that someone intended to do harm to someone. (II 370, 377).

Post-Shooting Events

Later that day, Felicia Dowell told Mr. Williams that Miller was dead. Mr. Williams said he did not do anything. (II 254). Mr. Williams did not know at that point that Miller was dead. (II 264-265). Mr. Williams began crying when she told him that Miller was dead. He never said that he shot Miller. (II 268).

No gunshot residue tests were performed on Mr. Williams, nor were his fingerprints found in the apartment. (I 153). All prints lifted from the apartment showed insufficient ridge detail for comparison. (I 152). The only fingerprint recovered from the area was from the doorway outside apartment # 33. It did not match Miller and a run through AFIS came up negative. (III 449-450).

Jacquees Senter testified that he had been a friend of Mr. Williams for six or seven years. (II 338). On February 6, he was at his house at 120 Henry Clay playing video games with Avery Montrell Phillips. (II 31 I, 338, 340). Around 3:00 p.m., Phillips went outside. Phillips, Mr. Williams, and Mr. Williams' sister left. Phillips and Mr. Williams returned around fifteen minutes later and Mr. Williams asked to use the phone. Phillips took a weapon from Mr. Williams and wrapped it up then stored it in the basement. Senter did not see any ammunition. (II 340-342, 349). Caiphas Dudley told Senter to dispose of the weapon. Kian Foster came later and took the gun (shown in a photograph admitted as PX #21). (II 343-344). Later, Senter went with his father and Foster to an area on Kenilworth to get the gun, and he turned it over to authorities to get himself out of trouble. (II 345-347). Senter denied telling police that Phillips was at the shooting. (II 349).

Avery Phillips testified that while he was at Senter's house playing video games, he saw Mr. Williams and his sister outside. Mr. Williams' sister's face was bloody. Mr. Williams told him that he had been in a fight, his sister tried to help, and someone had hit her with something. (II 311-312). Phillips went to the store, and afterward saw Mr. Williams, upset, break a window of a house on Henderson. (II 314). Sometime after that, Mr. Williams was walking behind him and told him, "I think I killed a dude." Phillips did not believe him until later, when he saw the short revolver in the basement of the house on Henry Clay. (II 316-317). He clarified on cross-examination that he was not sure if Mr. Williams said that he killed Miller or just that Miller was dead. (II 323). Phillips testified that he took the gun because Mr. Williams told him to, unloaded five bullets and gave it back to Mr. Williams. Phillips then tried to hide the gun and ammunition. (II 319-320).

Phillips testified that he incorrectly told police at first that he did not see Mr. Williams with a gun because he did not want Mr. Williams to get in trouble. (II 320-321). Phillips was accused of being involved and felt pressured by the police

when he gave his statement. (II 323). He thought he was under arrest and was not told that he could have an attorney. He testified that he could not recall the officer reading the Miranda warning form, but he did sign it. (II 330-332). His taped statement, the transcript of which was admitted as PX # 36b, indicates that he was read his rights. (II 325, 328, 389). Sgt. Roy Johnson testified that Phillips was not under arrest, but was read his rights because police had information that he might have been the second person at the shooting. Johnson elaborated that Jacquees Senter told him that Phillips admitted being there. (II 396).  Phillips at first denied any knowledge, until Johnson played the tape of Senter's interview, at which point Phillips told the police about the gun.  (III 385, 388).

Police received the handgun admitted as part of PX # 18 as the gun possibly used in the homicide. It was wrapped in a towel, wet, and had dirt on it, as it had been in the elements for several days. (III 441-442). No latent prints were obtained from it, as the surface was too poor. (III 443-444). A shell casing was found in the drain at Jacquees Senter's house, (II 391), and a bullet recovered from Miller's body. (II 373). No latent prints were found on the shell casing either. (III 444). The firearms examiner, Det. Sgt. Timothy Ketvirtis, testified that to a reasonable degree of scientific certainty, the .38 Special Remington Peters Cartridge case recovered from Senter's house was fired from the revolver admitted as part of PX # 18. The bullet was too mutilated to identify, but it had class characteristics similar to and consistent with test firings from the weapon. (II 355, 359-360).

The prosecution admitted as PX # 37 a certified copy of a Judgment of Sentence showing that Mr. Williams was convicted in 1998 of delivery of less than 50 grams of a controlled substance. (II 393). The defense had agreed that the name of the felony should be provided to the jury. (I 9-12).

Defense Counsel's App. Brf., pp. 1-8.  At the close of trial, the jury convicted Petitioner of the charged offenses.  The trial court subsequently sentenced him to life imprisonment without parole on the murder convictions, a concurrent term of two to five years imprisonment on the felon in possession conviction, and concurrent terms of two years imprisonment on the felony firearm convictions, to be served consecutively to the other sentences.

Following sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals raising the following claims through counsel and in a pro per supplemental brief:

I.     He was denied due process by the prosecutor's misconduct where the prosecutor subtly distorted the meaning of reasonable doubt.  Counsel was ineffective for failing to object.

II.     His conviction for felony murder (and the attendant felony firearm count) should be vacates (sic) as multiple murder convictions for the same death violate double jeopardy.

III.     The trial court abused its discretion when it denied his motion for a directed verdict of acquittal on the first-degree murder charge.

IV.     The trial court abused its discretion when it admitted highly prejudicial full color photographs over defense counsel's objection in violation of Michigan Rule of Evidence 403.

V.     His convictions must be reversed where the criminal complaint was never signed, verified, testified for probable cause, or sworn to, which was fatal to the arrest warrant and deprived the trial court of jurisdiction to try the case.

VI.     He was deprived of his Fifth and Fourteenth Amendment rights when the prosecutor made improper comments misrepresenting the evidence and vouching and bolstering the credibility of the prosecution's witnesses and called on the jury's civic conscience to reach its verdict.

VII.     He was denied the effective assistance of counsel when trial counsel failed to object to repeated misconduct on the part of the prosecutor, failed to properly investigate the witnesses and failed to introduce evidence in support of the defense theory of the crime.

VIII.     He was denied a fair trial due to the cumulative effect of the prejudicial errors at trial.

IX.     The mandatory two-year felony firearm and the mandatory non-parolable life sentences imposed by the trial court constitute determinate sentences which violate the Michigan Constitution and constitute cruel and unusual punishment.

The Michigan Court of Appeals vacated one murder conviction and the corresponding felony firearm conviction on double jeopardy grounds, but affirmed Petitioner's remaining convictions and sentences. *People v. Williams*, No. 241427, 2003 WL 22928768 (Mich. Ct. App. Dec. 11, 2003) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Williams*, 470 Mich. 868, 680 N.W.2d 900 (2004).

     Petitioner subsequently filed a motion for relief from judgment with the trial court asserting the following claims:

I.      He was improperly convicted of a crime that was never charged.

II.     The trial court reversibly erred by failing to sua sponte instruct the jury on the limited use of other bad acts evidence.

III.    The trial court erred in admitting unfair, prejudicial, and highly inflammatory 911 testimony.

IV.     Trial counsel was ineffective assistance for failing to object to the trial court's late amendment to the information, lack of instruction on the use of bad acts, and admission of the 911 testimony.

V.      Appellate counsel was ineffective and he was denied equal protection by the cumulative errors.

The trial court denied the motion finding that Petitioner had failed to establish prejudice to satisfy the cause and prejudice requirement for obtaining relief under Michigan Court Rule 6.508(D)(3). *People v. Williams*, No. 2001-179195-FC (Oakland Co. Cir. Ct. Jan. 10, 2006) (unpublished). Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals, which was denied "for lack of merit in the grounds presented." *People v. Williams*, No. 275423 (Mich. Ct. App. May 30, 2007) (unpublished). Petitioner also filed an application for leave to appeal with the Michigan Supreme Court, which was denied because he "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Williams*, 480 Mich. 952, 741 N.W.2d 363 (2007).

Petitioner thereafter filed his federal habeas petition raising the following claims:

I.      He was denied due process by the prosecutor's misconduct where the prosecutor subtly distorted the meaning of reasonable doubt. Counsel was ineffective for failing to object.

II.     The trial court abused its discretion when it admitted highly prejudicial full color photographs over defense counsel's objection in violation of Michigan Rule of Evidence 403.

III.    The trial court abused its discretion when it denied his motion for a directed verdict of acquittal on the first-degree murder charge.

8

IV.     He was deprived of his Fifth and Fourteenth Amendment rights when the prosecutor made improper comments misrepresenting the evidence and vouching and bolstering the credibility of the prosecution's witnesses and called on the jury's civic conscience to reach its verdict.

V.      He was denied the effective assistance of trial and appellate counsel when trial counsel failed to investigate witnesses, failed to timely object to prosecutorial misconduct, and failed to introduce evidence in support of the defense theory of the case and appellate counsel failed to raise more meritorious issues on his appeal of right.

VI.     The trial court committed reversible error by failing to sua sponte instruct the jury on the limited use of other bad acts evidence and by admitting highly inflammatory 911 testimony.

VII.    He was denied his right to due process and a fair trial due to the cumulative effect of the prejudicial errors at trial.

Respondent has filed an answer to the petition contending that it should be denied because the claims lack merit and/or are barred by procedural default.  Petitioner has filed a reply to that answer.

## II.  Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his habeas petition after the AEDPA's effective date.  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

9

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F.

Supp. 354, 359 (E.D. Mich. 2002).

Lastly, §2254(e)(1) requires that this Court presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

### III. Analysis

### A. Prosecutorial Misconduct Claims

Petitioner first asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by distorting the concept of reasonable doubt, by misrepresenting the evidence, by vouching for and bolstering the credibility of the prosecution's witnesses, and by making a civic duty argument. Respondent contends that these claims are barred by procedural default and/or lack merit. This Court agrees.

### 1. Procedural Default

Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977). The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001). "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last *explained* state court judgment should be used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or unexplained

denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

Here, the Michigan Court of Appeals rendered the last reasoned opinion. In dismissing these claims, the court relied upon a state procedural bar – Petitioner's failure to object at trial. *See Williams*, 2003 WL 22928768 at *1-2. The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *See People v. Carines*, 460 Mich. 750, 763, 597 N.W.2d 130 (1999); *People v. Stanaway*, 446 Mich. 643, 687, 521 N.W.2d 557 (1994); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. *See Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989). Plain error review does not constitute a waiver of state procedural default rules. *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). In this case, the Michigan Court of Appeals denied these claims based upon Petitioner's failure to object at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). Petitioner alleges ineffective assistance of trial counsel as cause to excuse his procedural default. Petitioner, however, cannot demonstrate that counsel erred or that he was prejudiced because his prosecutorial misconduct claims lack merit. *See* discussion *infra*. Petitioner has thus failed to establish cause and prejudice to excuse his procedural default as to these claims.

12

Petitioner has also not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *See Schlup v. Delo,* 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner has made no such showing. Accordingly, his prosecutorial misconduct claims are barred by procedural default, lack merit, and do not warrant habeas relief.

### 2. Merits

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a prosecutorial misconduct claim, a habeas petitioner must demonstrate that the prosecutor's remarks or conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

The United States Court of Appeals for the Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights. *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing cases). First, the court must determine whether the challenged statements were indeed improper. *Id*. at 452. Upon a finding of impropriety, the court must decide whether the statements were flagrant. *Id.* Flagrancy is determined by an examination of four factors: 1) whether the statements tended to mislead the jury or prejudice the accused; 2) whether the statements were isolated or among a series of improper

13

statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused. *Id.*; *see also Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000) (citing *United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999)). "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the defendant.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (citations omitted).

Petitioner first asserts that the prosecutor engaged in misconduct by distorting the definition of reasonable doubt during rebuttal. Petitioner objects to the following remarks:

> Now reasonable doubt, if there was reasonable doubt, in this case...it would hit you in the face. You're not going to have to go back in the jury room and look for it, it's going to be there, you'll know it. And if there is reasonable doubt, you'll return a not guilty verdict. But again, you're reasonable people. If the evidence in this case has shown that you think he did it and it's proven by the evidence, then in fact, I have met my burden....(III 489).

A prosecutor in a criminal case may not misstate the law. *See, e.g., Caldwell v. Mississippi*, 472 U.S. 320 (1985). The Michigan Court of Appeals denied relief on this claim on plain error review stating that the prosecutor "merely expanded on, and responded to defense counsel's contention that reasonable doubt is a function of common sense," that the remarks were not an attempt to distort or lower the burden of proof, and that any potential error was cured by the trial court's instructions. *See Williams*, 2003 WL 22928768 at *1. This Court agrees. The prosecutor's argument was responsive to defense arguments and was not intended to minimize or shift the burden of proof. More importantly, to the extent that such remarks could be seen as improper, they were not so flagrant as to deny Petitioner a fair trial. Furthermore, any potential prejudice was cured by the trial court's instructions on reasonable doubt and the burden of proof, as well as the court's instructions that the jury had to follow the law as set forth by the court and that the attorneys' remarks were not evidence. Jurors are presumed to follow the court's instructions. *See United States v. Powell*, 469

U.S. 57, 66 (1984) ("Jurors . . . take an oath to follow the law as charged, and they are expected to follow it."). Habeas relief is not warranted on this claim.

Petitioner also asserts that the prosecutor engaged in misconduct by arguing facts not in evidence by stating, "If only you could match the gun between the shell casing and the bullet found from the victim. Lo and behold, you got that in this case...." It is well-settled that a prosecutor may not misstate the evidence or assume the existence of prejudicial facts not in evidence. *See Donnelly*, 416 U.S. at 646; *Darden v. Wainwright*, 477 U.S. 168, 182 (1986); *Hodge v. Hurley*, 426 F.3d 368, 380-81 (6th Cir. 2005); *United States v. Emuegbunam*, 268 F.3d 377, 404 (6th Cir. 2001). On plain error review, the Michigan Court of Appeals denied relief on this claim finding that the remarks were based upon a reasonable inference from the firearm expert's testimony that the shell casing was fired from the gun recovered by police and the bullet was consistent with that type of gun. *See Williams*, 2003 WL 22928768 at *1. This Court agrees. The prosecutor's argument about the weapon evidence was based upon reasonable inferences from the expert testimony. It is well-settled that a prosecutor has leeway to argue reasonable inferences from the evidence. *See, e.g., Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000). Petitioner has not established that the prosecutor erred or that he was denied a fundamentally fair trial by the disputed remarks. Habeas relief is not warranted on this claim.

Petitioner next asserts that the prosecutor engaged in misconduct by vouching for and bolstering the credibility of prosecution witnesses. He cites the following remark in support of this claim: "[The witness] testified...hey this is the guy that shot Timothy Miller....think about her motivation... nothing indicates any motivation to get [Petitioner]." It is well-settled that it is improper for a prosecutor to express personal beliefs as to a defendant's guilt or to express personal opinions concerning a witness's credibility. *See United States v. Young*, 470 U.S. 1, 9-10 (1985);

*United States v. Modena*, 302 F.3d 626, 634 (6th Cir. 2002). Such statements are improper because they can convey the impression that the prosecutor has evidence not presented to the jury which supports the charge against the defendant thereby infringing upon the defendant's right to be judged solely based upon the evidence presented and because the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own. *See United States v. White*, 58 Fed. Appx. 610, 617-18 (6th Cir. 2003) (citing cases).

The Michigan Court of Appeals rejected this claim on plain error review finding that the prosecutor made no comments based upon personal beliefs and did not improperly vouch for witnesses. *See Williams*, 2003 WL 22928768 at *2. This Court agrees. The prosecutor's argument was based upon the testimony and reasonable inferences therefrom. The prosecutor did not express any personal beliefs about the case or indicate special knowledge of guilt. Rather, the prosecutor urged the jury to review the evidence and consider the credibility of the witnesses in deciding the case. As noted, a prosecutor has leeway to argue reasonable inferences from the evidence. *See Byrd*, 209 F.3d at 535. Moreover, a prosecutor may argue from the facts that a witness is (or is not) worthy of belief. *See Portuondo v. Agard*, 529 U.S. 61, 69 (2000). Petitioner has failed to establish that the prosecutor's argument was improper or that it rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

Lastly, Petitioner asserts that the prosecutor made an improper civic duty argument by telling the jury that the justice system works the same way even though the crime occurred in a drug-infested part of the city. It is well-settled that a prosecutor may not make remarks "calculated to incite the passions and prejudices of the jurors." *United States v. Solivan*, 937 F.2d 1146, 1151 (6th Cir. 1991). On plain error review, the Michigan Court of Appeals denied relief on this claim finding that the prosecutor's statements were derived from the testimony concerning the crime, its

16

location, and the parties, were meant "to persuade the jury to focus on the law, rather than a distaste for the people involved in the case," and were a "fair comment" on the evidence and the prosecution's theory of the case. *See Williams*, 2003 WL 22928768 at *2. This Court agrees. The prosecutor's comments were based upon the testimony and were meant to encourage the jury to properly apply the law even though the people involved in the case may have been less than reputable. The comments were not improper. Petitioner has also failed to establish that the prosecutor's remarks, even if improper, were so flagrant as to deny him a fair trial. Habeas relief is not warranted on this claim.

## B. Photographic Evidence Claim

Petitioner also asserts that he is entitled to habeas relief because the trial court erred in admitting graphic photographs of the victim. Respondent contends that this claim is not cognizable and lacks merit. Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief. *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir. 1994).

The Michigan Court of Appeals denied relief on this claim finding the photographs were relevant and admissible to show the crime scene, the positioning of the body, and the location and type of wound, as well as to support a witness's testimony and credibility. The court further ruled that the photographs were not overly gruesome nor unfairly prejudicial. *See Williams*, 2003 WL 22928768 at *3. This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. The admission of relevant photographs of a crime scene or a victim, even if

17

gruesome, does not deprive a criminal defendant of a fair trial. *See Cooey v. Coyle*, 289 F.3d 882, 893-94 (6th Cir. 2002) (citing *Gerlaugh v. Stewart*, 129 F.3d 1027, 1032 (9th Cir. 1997), for proposition that such photographs do not raise the "spectre of fundamental fairness such as to violate federal due process of law"). Because the photographs were relevant and admissible under state law, Petitioner cannot show that he was denied a fair trial by their admission. Habeas relief is not warranted on this claim.

### C.  Directed Verdict/Insufficient Evidence Claim

Petitioner next asserts that he is entitled to habeas relief because the trial court erred in denying his motion for a directed verdict on the first-degree premeditated murder charge because there was insufficient evidence of premeditation. Respondent contends that this claim lacks merit and does not warrant relief.

To the extent that Petitioner relies upon state law to assert that he was entitled to a directed verdict on the first-degree premeditated murder charge, he fails to state a claim for habeas relief. It is well-settled that habeas relief may not be granted for alleged violations of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Shacks v. Tessmer*, 2001 WL 523533, *6 (6th Cir. May 8, 2001) (unpublished) (finding no merit in petitioner's claim that the trial court erred in denying his motion for directed verdict of acquittal on first-degree murder charge based upon alleged state law violations).

Petitioner, however, asserts that the prosecution presented insufficient evidence of premeditation to support his first-degree premeditated murder conviction. In *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the United States Supreme Court established that a federal court's review of a sufficiency of the evidence claim must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt." The Court must view this standard through the framework of 28 U.S.C. § 2254(d). *See Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16. "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003) (citation omitted).

Under Michigan law, first-degree premeditated murder requires proof that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate. *See* Mich. Comp. L. § 750.316; *People v. Kelly*, 231 Mich. App. 627, 642, 588 N.W.2d 480 (1998). Premeditation and deliberation require sufficient time to allow the defendant to take a second look. *People v. Schollaert*, 194 Mich. App. 158, 170, 486 N.W.2d 312 (1992). The time interval may be minimal – merely seconds – depending upon the circumstances of the killing. *People v. Berthiaume*, 59 Mich. App. 451, 456, 229 N.W.2d 497 (1975). Premeditation and deliberation may be established by evidence of "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *Schollaert*, 194 Mich. App. at 170. Circumstantial evidence and reasonable inferences drawn therefrom may be sufficient to prove the elements of the crime, *People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993), including a defendant's intent or state of mind. *People v. Dumas*, 454 Mich. 390, 398, 563 N.W.2d 31 (1997). Use of a lethal weapon supports an inference of an intent to kill. *People v. Turner*, 62 Mich. App. 467, 470, 233 N.W.2d 617 (1975).

Applying the *Jackson* standard, the Michigan Court of Appeals ruled that the prosecution presented sufficient evidence to support Petitioner's first-degree murder conviction. The court explained in relevant part:

19

Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could find that the prosecutor proved first-degree premeditated murder beyond a reasonable doubt. On the premeditation element, ample evidence showed that there was a significant amount of time for defendant to take a 'second look' at his actions. *See People v. Plummer*, 229 Mich App 293, 300; 581 NW2d 753 (1998), quoting *People v. Morrin*, 31 Mich App 301, 329-331; 187 NW2d 434 (1971).FN8 On the malice element, defendant used a deadly weapon, a gun, to kill the victim. Defendant also forced entry to the apartment in order to confront the victim. The facts and circumstances of this case are clearly sufficient for a reasonable juror to infer malice. *Carines, supra* at 759.

FN8. Indeed, between the initial confrontation and the subsequent shooting, the victim and his friend had time to smash defendant's car, walk to the store to buy wine, walk to the victim's house, discuss the dangers in staying there, leave the victim's house, walk to a neighbor's house, drink the wine, and fall asleep. Between the altercation and the shooting, defendant had time to locate a weapon, go to the victim's house, throw rocks at the house, walk to neighbor's apartment, yell up and demand entry to the apartment, and break into the apartment in order to find the victim.

*Williams*, 2003 WL 22928768 at *2.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or of the facts in light of the evidence. The evidence at trial, particularly Doretha McCaleb's testimony, revealed that Petitioner hunted down the victim and Billy Hatten, threatened to kill them, forced his way into the apartment where they were hiding out, and then shot the victim in the chest. Such evidence was sufficient to establish premeditation and deliberation and the requisite malice to support Petitioner's first-degree premeditated murder conviction. Further, as noted by the state court, the record reveals that Petitioner had sufficient time to cool down from his prior altercation with the victim and Billy Hatten and had ample opportunity to take a "second look" and consider his actions.

Petitioner's insufficient evidence claim challenges the credibility of the testimony and the inferences the jury drew from the evidence presented at trial. However, it is well-settled that "[a] federal habeas corpus court faced with a record of historical facts that supports conflicting

20

inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983).   It is the job of the jury, not a federal habeas court, to resolve evidentiary conflicts.  *See Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002).  Given the evidence at trial, a rational trier of fact could have found the elements of first-degree murder, including premeditation and malice, beyond a reasonable doubt.[1]  Habeas relief is not warranted on this claim.

### D.  Ineffective Assistance of Trial Counsel Claims

Petitioner next asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to investigate witnesses and present a defense and for failing to object to the prosecutor's conduct.  Respondent contends that the first claim lacks merit and the second claim is barred by procedural default and lacks merit.

In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court set forth a two-pronged test to determine whether a habeas petitioner received ineffective assistance of counsel.  First, a petitioner must  prove that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment.  466 U.S. at 687.  Second, the petitioner must establish that the deficient performance prejudiced the defense.  Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.  *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside

---

[1]There was also ample evidence to support Petitioner's first-degree murder conviction under the alternate felony murder theory given the testimony that he broke into McCaleb's apartment and shot the victim.  *See* Mich. Comp. L. § 750.316; *People v. Carines*, 460 Mich. 750, 759, 597 N.W.2d 130 (1999).

the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 686. The primary "focus should be on whether the result of the trial was 'fundamentally unfair or unreliable.'" *Tinsley v. Million*, 399 F.3d 796, 802 (6th Cir. 2005) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

Petitioner first asserts that counsel was ineffective for failing to investigate witnesses and present a defense. Specifically, he claims that a man named Maurice Jones told the police that the victim threw a knife at Petitioner and counsel should have presented such testimony in support of a manslaughter defense. It is well-established that defense counsel has a duty to conduct a reasonable investigation into the facts of a defendant's case, or to make a reasonable determination that such investigation is unnecessary. *See Wiggins v. Smith*, 539 U.S. 510, 522-23 (2003); *Strickland*, 466 U.S. at 691; *Stewart v Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2007) ; *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005); *O'Hara v. Wiggington*, 24 F.3d 823, 828 (6th Cir. 1994). "American Bar Association standards ... also mandate counsel's duty to investigate all leads relevant to the merits of the case." *Blackburn v. Foltz*, 828 F.2d 1177, 1183 (6th Cir. 1987); *see*

22

*also Rompilla v. Beard*, 545 U.S. 374, 387 (2005) (noting that ABA standards provide guidance for determining the reasonableness of counsel's conduct). The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns*, 395 F.3d at 258. Inattention or negligence, as opposed to reasoned strategic judgment, is inexcusable. *See Wiggins*, 539 U.S. at 526; *Sims v. Livesay*, 970 F.2d 1575, 1580-81 (6th Cir. 1992).

The Michigan Court of Appeals denied relief on this claim finding that Petitioner had failed to move for an evidentiary hearing or new trial in the trial court and the record indicated that Petitioner had instructed counsel not to present a manslaughter theory. *See Williams*, 2003 WL 22928768 at *3. The court also noted that the record "does not include information on what counsel investigated or which witnesses he interviewed" in denying relief on this claim. *Id.* at n. 11.

The Michigan Court of Appeals' decision is neither contrary to *Strickland* nor an unreasonable application thereof. First, the record reveals that Maurice Jones was Doretha McCaleb's neighbor and that he made a 911 call prior to the shooting in which he said that someone was next door selling drugs or trying to break in with a knife. Billy Hatten testified that he and the victim were armed with hammers and that the knife was jammed between the door and a board in an effort to keep the door closed. There is no evidence in the record before this Court that Jones saw anyone throw the knife (or that he witnessed the shooting). Moreover, Petitioner has not presented an affidavit from Jones in support of this claim, nor has he offered any evidence regarding counsel's investigation of Jones or the defense case in general. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See Cross v. Stovall*, 238 Fed. Appx. 32, 39-40 (6th Cir. 2007); *Prince v. Straub*, 78 Fed. Appx. 440, 442 (6th Cir. 2003);

23

*Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient basis to hold an evidentiary hearing in habeas proceedings).

Second, Petitioner's defense at trial was that he did not commit the shooting even though he may have been present at the scene. Defense counsel alternatively argued that if the jury found that Petitioner did the shooting, then they should find that he acted in the heat of passion arising from the dispute earlier that day. Petitioner never claimed that he acted in self-defense. Counsel was aware of the 911 call and the knife issue and used that information to argue reasonable doubt during closing arguments. Given the circumstances of the case, counsel may have reasonably determined that this was an effective strategy, that further investigation of Maurice Jones was unnecessary, and/or that Jones' testimony would not have benefitted the defense. Petitioner has not rebutted the presumption that counsel's conduct was sound trial strategy. Furthermore, given the significant evidence of Petitioner's guilt presented at trial, particularly Doretha McCaleb's testimony, Petitioner cannot establish that he was prejudiced by counsel's conduct in this regard. Habeas relief is not warranted on this claim.

Petitioner also asserts that counsel was ineffective for failing to object to the alleged instances of prosecutorial misconduct. Given the Michigan Court of Appeals' plain error review and denial of relief on those claims, as well as this Court's determination that those claims lack merit, Petitioner cannot establish that counsel was ineffective under the *Strickland* standard for failing to object to the prosecutor's conduct. Habeas relief is not warranted on this claim.[2]

---

[2]Given this determination, the Court need not address Respondent's procedural default argument as to this issue.

24

### E.  Remaining Claims

Petitioner also asserts that he is entitled to habeas relief because the trial court failed to *sua sponte* instruct the jury on the limited use of other bad acts evidence and because the trial court erred in admitting the 911 call.  Petitioner relatedly asserts that appellate counsel was ineffective for failing to raise these issues on direct appeal.  Respondent contends that the jury instruction and evidentiary claims are barred by procedural default and that the appellate counsel claim lacks merit.

As discussed *supra*, federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules.  *See Wainwright*, 433 U.S. at 85-87.  The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent."  *White*, 431 F.3d at 524; *Howard*, 405 F.3d at 477.  For such a default to bar federal habeas review, the last state court rendering a judgment must 'clearly and expressly' state that its judgment rests on a state procedural bar.  *Harris*, 489 U.S. at 263; *see also Ylst*, 501 U.S. at 803-05.  If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion.  *Id.*

Petitioner first presented his jury instruction and 911 call claims to the state courts in his motion for relief from judgment.  The Michigan Supreme Court denied relief pursuant to Michigan Court Rule 6.508(D), which provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom.  *See* Mich. Ct. R. 6.508(D)(3).  The Michigan Supreme Court's decision, while brief, was based upon an independent and adequate state procedural rule.  *See Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000) (Michigan Supreme Court's citation to MCR

6.508(D) to deny relief constitutes a reasoned decision invoking a procedural bar); *see also Alexander v. Smith*, 311 F.3d 875, 883-84 (6th Cir. 2009) (confirming that *Simpson* is binding precedent); *cf. Ivory v. Jackson*, 509 F.3d 284, 292-93 (6th Cir. 2007), *cert. den.* 128 S. Ct. 1897 (2008) (ruling that it may be appropriate to look to the state trial court's decision denying a motion for relief from judgment to determine whether the appellate courts relied upon a procedural default in denying relief pursuant to MCR 6.508(D)); *Abela v. Martin*, 380 F.3d 915, 921-23 (6th Cir. 2004) (distinguishing case where Michigan Court of Appeals denied relief for lack of merit).[3]  In this case, the Michigan Supreme Court relied upon a clear state procedural default in denying Petitioner relief on his jury instruction and 911 call claims.

As noted, a state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750-51; *Gravley*, 87 F.3d at 784-85; *see also Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007).

Petitioner asserts that appellate counsel was ineffective as cause to excuse his failure to raise these issues on direct appeal.  Petitioner has not shown that appellate counsel was ineffective.  In order to establish ineffective assistance of counsel, Petitioner must show "that counsel's performance was deficient...[and] that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).  In determining whether counsel's performance was deficient,

[t]he court must ... determine whether, in light of all the circumstances, the

---

[3]The state trial court denied relief from judgment because Petitioner failed to establish prejudice so as to satisfy the cause and prejudice requirement of MCR 6.508(D)(3).  The Michigan Court of Appeals denied relief for lack of merit in the grounds presented without further explanation.

> identified acts or omissions were outside the wide range of professionally competent assistance .... At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland*, 466 U.S. at 690.  Therefore, judicial scrutiny of counsel's performance must be "highly deferential."  *Id*. at 689.  The defense is prejudiced only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal.  *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).  The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the ... goal of vigorous and effective advocacy .... Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel."  *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail."  *See Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52).  "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome."  *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).  Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal.  *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

27

Petitioner has failed to show that by omitting the jury instruction and 911 call claims (or any other claims) presented in his motion for relief from judgment appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate counsel presented viable issues, including a successful double jeopardy claim, on direct appeal. Petitioner has not shown that appellate counsel's strategy in presenting such claims and not raising the claims contained in the motion for relief from judgment was deficient or unreasonable. Petitioner has failed to demonstrate that appellate counsel was ineffective so as to establish cause to excuse his procedural default. He has likewise failed to show that he is entitled to habeas relief based upon his independent claim that appellate counsel was ineffective.

The Court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *See Smith*, 477 U.S. at 533; *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983). Nonetheless, the Court briefly notes that Petitioner's jury instruction and 911 call claims lack merit. In order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show that the instructions, taken as a whole, were so infirm that they rendered the entire trial fundamentally unfair. *See Estelle*, 502 U.S. at 72; *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). The failure to give an instruction does not deprive a petitioner of fundamental fairness where the instructions as a whole adequately present the defense theory to the jury. *See Duckett v. Godinez*, 67 F.3d 734, 743 (9th Cir. 1995). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson*, 431 U.S. at 155. State law instructional errors rarely form the basis for federal habeas corpus relief. *See Estelle*, 502 U.S. at 71-72. The jury instructions in this case were adequate to protect Petitioner's rights. The evidence of Petitioner's prior conviction was properly admitted to establish his status as a felon for the felon in possession charge. The court was not required to *sua sponte* instruct the

28

jury on the use of that evidence. The trial court's instructions on the elements of the crimes, what constitutes evidence, the burden of proof, and other relevant matters, were sufficient to satisfy due process.

Similarly, alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle*, 502 U.S. at 67-68; *Serra*, 4 F.3d at 1354. Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief. *See Bugh*, 329 F.3d at 512. In this case, the 911 call was relevant and admissible to explain the circumstances of the crime and to support the witnesses' testimony. Petitioner has not shown that its admission was improper or that it rendered his trial fundamentally unfair. As noted by the state trial court, the evidence of Petitioner's guilt was overwhelming. Consequently, any error was harmless beyond a reasonable doubt. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Fry v. Pliler*, 551 U.S. 112, 117-18 (2007) (confirming that *Brecht* standard applies in "virtually all" habeas cases); *Ruelas v. Wolfenbarger*, 580 F.3d 403 (6th Cir. 2009) (ruling that *Brecht* is "always the test" in this circuit).

Lastly, Petitioner has not demonstrated that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of someone who is actually innocent. *See Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). Such a claim of actual innocence requires a petitioner to present new reliable evidence that was not presented at trial. *Schlup*, 513 U.S. at 324. Actual innocence means factual innocence, not mere legal insufficiency. *Bousley*, 523 U.S. at 623. Petitioner has made no such showing. His jury instruction and 911 call claims are thus barred by procedural default and lack merit, his ineffective assistance of appellate counsel claim lacks merit, and none of those claims warrant habeas relief from this Court.

## H.  Cumulative Error Claim

Lastly, Petitioner asserts that he is entitled to habeas relief based upon the cumulative effect of the alleged errors at trial.  Respondent contends that this claim lacks merit and does not warrant federal habeas relief.  The Michigan Court of Appeals rejected this claim because the court found no errors, except for the double jeopardy violation as to one of the first-degree murder convictions, warranting reversal.  *See Williams*, 2003 WL 22928768 at *4.  This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof.  Petitioner cannot establish that he is entitled to habeas relief based upon cumulative error because he has failed to demonstrate an underlying constitutional violation.  *See Gillard v. Mitchell*, 445 F.3d 883, 898 (6th Cir. 2006).  Moreover, the Sixth Circuit has noted that the Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief."  *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002).  Habeas relief is not warranted on this claim.

## IV.  Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims presented in his petition.   Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue.  *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that...jurists could conclude

30

the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id*. at 336-37. When a court rejects a habeas claim on procedural grounds without addressing the claim's merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484-85.

Having considered the matter, the Court concludes that reasonable jurists would not find the Court's procedural ruling debatable. The Court further concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to his habeas claims. Accordingly, the Court **DENIES** a certificate of appealability. The Court also **DENIES** leave to proceed *in forma pauperis* on appeal because any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

**IT IS SO ORDERED.**

**Dated: December 28, 2009**

**S/George Caram Steeh**
**GEORGE CARAM STEEH**
**UNITED STATES DISTRICT JUDGE**

---

**CERTIFICATE OF SERVICE**

Copies of this Order were served upon attorneys of record on
December 28, 2009, by electronic and/or ordinary mail.

**S/Josephine Chaffee**
**Deputy Clerk**

---